## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 24-00152-KD-1 |
| | ) | |
| JOTHAN LEE SHEPHERD, | ) | |
| aka "JOT" | ) | |

## PLEA AGREEMENT

The defendant, **JOTHAN LEE SHEPHERD, aka "JOT,"** represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.  The defendant understands his rights as follows:

    a.  To be represented by an attorney;

    b.  To plead not guilty;

    c.  To have a trial by an impartial jury;

    d.  To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

    e.  To not be compelled to incriminate himself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.  The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Indictment, charging a violation of Title 18, United States Code, Section 933(a)(3), Firearms Trafficking Conspiracy.

1

3.    The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4.    The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5.    The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6.    The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charges that have been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offenses.

7.    The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charges. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8.    A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that

2

the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

9.  This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

10.  The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## **PENALTY**

11.  The maximum penalty the Court could impose as to Count One of the Indictment is:

a.  Fifteen (15) years' imprisonment;

b.  A fine not to exceed $250,000;

c.  A term of supervised release of three (3) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

d.  A mandatory special assessment of $100.00; and

e.  Such restitution as may be ordered by the Court.

3

## SENTENCING

12.     The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

13.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.     The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

15.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

4

16.     The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## RESTITUTION

17.     Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing and as to all relevant conduct regardless of whether it relates to the count of conviction.

## FORFEITURE

18.     The defendant agrees to forfeit to the United States any right, title, and interest in all assets subject to forfeiture under the notice of forfeiture contained in the charging document, including property specified in any bill of particulars and property previously seized by the government for administrative, civil, or criminal forfeiture. The defendant further consents to the filing of a motion for a preliminary order forfeiting such property and any dollar amount specified in the notice of forfeiture or bill of particulars, and the defendant confesses the requisite nexus between the property and the charge of the conviction. The defendant hereby withdraws any petition for remission or claim for such property and further waives any right to contest or appeal the government's forfeiture proceedings for any reason, including on grounds that the forfeiture constitutes an unconstitutionally

excessive fine or punishment, and in any manner, including by claim, petition, appeal or collateral attack.

## FINANCIAL OBLIGATIONS

19.     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

20.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

21.     The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35

22.     The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow

the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a.    The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offenses with which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

b.    The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he has knowledge or information regardless of whether law enforcement authorities question him specifically about any such offense. This provision requires the defendant to divulge all information available to him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c.    The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any

grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d.     If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e.     The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f.     The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g.     If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise

of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h.    The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false

information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1)    permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2)    permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i.    Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his

cooperation. The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j.      The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter. His failure to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights he may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

23.    As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

a.      **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

(1)    any sentence imposed in excess of the statutory maximum;

11

(2)    any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

24.    If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

25.    The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

26.    If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## **VIOLATION OF AGREEMENT**

27.    The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

28.    In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he

violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

29.    This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.


Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY


Date: February 5, 2025

Justin D. Roller
Assistant United States Attorney


Date: 2-6-2025

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 4|8|25

_____
Jothan Lee Shepherd
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offenses charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 4|8|25

_____
Thomas B. Walsh
Attorney for Defendant

14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 24-00152-KD-1 |
| | ) | |
| JOTHAN LEE SHEPHERD, | ) | |
| aka "JOT" | ) | |

## FACTUAL RESUME

The defendant, **JOTHAN LEE SHEPHERD, aka "JOT"** ("**SHEPHERD**"), admits the allegations of Count One of the Indictment.

## ELEMENTS OF THE OFFENSE

**SHEPHERD** understands that in order to prove a violation of Title 18, United States Code, Section 933(a)(3), as charged in Count One of the Indictment, the United States must prove:

First:    two or more persons agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 933(a)(1) and/or 18 U.S.C. § 933(a)(2), as charged in the Indictment, the elements of which are as follows:

    a)    the defendant knowingly shipped, transported, transferred, caused to be transported, or disposed of a firearm to another person, and/or knowingly received a firearm from another person;

    b)    the shipping, transporting, transferring, causing to be transported, or disposition of the firearm, and/or receipt of the firearm, was in or otherwise affecting interstate and/or foreign commerce; and

    c)    the defendant knew or had reasonable cause to believe that the use, carrying, possession, and/or receipt of the firearm would constitute a felony; and

Second:    the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

1

## OFFENSE CONDUCT

**SHEPHERD** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **SHEPHERD's** plea of guilty. The statement of facts does not contain each and every fact known to **SHEPHERD** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, amounts, and locations referenced below are approximations.

### Overview

**SHEPHERD** admits that from at least June 1, 2024, to June 24, 2024, the exact dates being unknown, in the Southern District of Alabama, and elsewhere, he and his codefendant, Braxton Allen Hissong, aka "Braxton Benchmade" ("Hissong"), willfully, knowingly, and unlawfully conspired together with one another, and with other persons, both known and unknown, (1) to ship, transport, transfer, cause to be transported, and otherwise dispose of a firearm, namely, an Anciens Etablissements Pieper S.A. Herstal, MI 34, 9mm machinegun pistol, patent or serial number 390 (the "Machinegun"), to another person in and affecting commerce, knowing and having reasonable cause to believe that the use, carrying, and possession of the Machinegun by the recipient would constitute a felony, and attempted to do so, in violation of 18 U.S.C. § 933(a)(1); and (2) to receive from another person, in and affecting commerce, a firearm, namely, the Machinegun, knowing and having reasonable cause to believe that such receipt would constitute a felony, and attempted to do so, in violation of 18 U.S.C. § 933(a)(2), all in violation of 18 U.S.C. § 933(a)(3).

As detailed below, in June 2024, Hissong shipped the Machinegun in the U.S. mail from Lakeway, Texas to **SHEPHERD** in Saraland, Alabama. Law enforcement arrested **SHEPHERD** as he attempted to pick up the Machinegun in Saraland. Agents executed a search warrant for the

contents of **SHEPHERD's** cell phone, which contained numerous communications regarding the conspiracy to which **SHEPHERD** is pleading guilty.

### June 20–24, 2024: Hissong ships the Machinegun to SHEPHERD via the U.S. mail; law enforcement recover the Machinegun in Saraland and arrest SHEPHERD attempting to pick up the Machinegun

On June 20, 2024, the Saraland Police Department ("SPD") was dispatched to a Zaxby's restaurant located at 57 Shell Street in Saraland regarding a suspicious package. The manager opened the package and located three firearms. The firearms were protected by trash bags and the inside of the box was filled with spray foam, holding the firearms in tightly. The firearms were: (1) a Glock, Model 45 Gen 5, 9mm pistol, bearing serial number BKDN643; (2) a Davide Pedersoli, Model HOWDAH, 45/410 caliber pistol, bearing serial number HA01166; and (3) the Machinegun. Law enforcement obtained video from a post office in Lakeway, Texas that showed Hissong mailing the package on June 11, 2024.

The package had a return address label bearing the name "F. Braxton" and an address associated with Hissong in Austin, Texas. The package was addressed to "Jothan Shepherd, 57 Shell Street, Saraland, AL 36571," which is the location of the Zaxby's restaurant in Saraland. In the upper right corner of the box, a United States Postal Service ("USPS") sticker stated, "U.S. Postage Paid, USPS Ground Advtg Lakeway, TX 78734, June 11, 2024, $115.65." Hissong sent the package via Registered Mail.

On June 24, 2024, SPD received a phone call from the manager of the Zaxby's in Saraland reporting that **SHEPHERD** had come to the Zaxby's asking for his package, and left his phone number. The Zaxby's manager had also received a telephone call from person using an Austin, Texas-area phone number inquiring about the package. The manager told **SHEPHERD** and the

3

Texas caller that they had not been working when the package was delivered and would have to contact other employees who were and see if they still had the package.

An SPD detective, acting in an undercover capacity, called **SHEPHERD**, utilizing the phone number that **SHEPHERD** had provided to the manager of Zaxby's. The detective told **SHEPHERD** that the package was sent to the Saraland post office to return to the sender. The detective provided **SHEPHERD** with a phone number of the post office if he wanted to inquire further.

**SHEPHERD** contacted the number, which routed to a United States Postal Inspector. The Inspector told **SHEPHERD** he could retrieve his package from the post office located at 104 Norton Avenue in Saraland. An employee at the post office advised the Inspector of a white male inquiring about the package earlier that morning.

While conducting surveillance at the Saraland post office, SPD officers observed a Cadillac Escalade (the "Escalade") circling in the area of the Post Office. The Escalade eventually pulled into the parking lot of the post office and **SHEPHERD** exited the vehicle and entered the post office, as captured on video surveillance.

**SHEPHERD** stood in line and was speaking with someone on his cell phone. Once at the counter, **SHEPHERD** told the Inspector that he was there to retrieve a package. The Inspector handed **SHEPHERD** the package and **SHEPHERD** signed for the package. As **SHEPHERD** was about to leave with the package, he started to inspect the outside of the package and stated that he wanted to refuse it.

**SHEPHERD** left the post office without the package and entered his Escalade. Once **SHEPHERD** drove away from the location, SPD conducted a motor vehicle stop and took

4

SHEPHERD into custody. SHEPHERD was read his *Miranda* rights, which he waived and agreed to speak with officers.

SHEPHERD was transported to SPD and was interviewed by an SPD detective and a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). SHEPHERD told agents he was picking up parts for a transmission for his truck, and then stated that he wished to speak with his attorney. Agents seized SHEPHERD's cell phone as evidence and later obtained a warrant to search its contents (described below).

**Evidence of the conspiracy from SHEPHERD's cell phone**

SHEPHERD's cell phone contained evidence of the firearms-trafficking conspiracy to which SHEPHERD is pleading guilty. A non-exhaustive sample of that evidence is detailed below.

In an April 28, 2024, Facebook Messenger chat thread between SHEPHERD and Hissong, who was using the alias "Braxton Benchmade," Hissong sent SHEPHERD a photograph of a firearm packaged up for mailing and told SHEPHERD that he sold the "MP35" and the buyer wanted it "bad." The term "MP35" refers to a firearm similar to the Machinegun seized by SPD from Zaxby's on June 20, 2024. Like the Machinegun, the MP35 is also a submachinegun pistol manufactured during World War II.

In a Facebook Messenger chat thread dated June 22, 2024, SHEPHERD sent Hissong a picture of USPS tracking information indicating that the package containing the Machinegun was delivered to the "front desk/reception/mail room" in Saraland on June 20, 2024. SHEPHERD asked, "What's up with this?" Hissong told SHEPHERD that he had to pick up the package because he did not sign for it. When SHEPHERD inquired further about what had occurred with the shipment of the Machinegun, Hissong stated he did not know what was going on and

**SHEPHERD** needed to sign for the package. Hissong added that he did not want **SHEPHERD** leaving the package containing the Machinegun at the post office in Saraland. **SHEPHERD** told Hissong he would go there on Monday (June 24, 2024) before he left to go out of town. Hissong reiterated that he wanted **SHEPHERD** to retrieve the package immediately because their names were on the package. The package that **SHEPHERD** and Hissong were discussing was the package of firearms containing the Machinegun that SPD seized from Zaxby's on June 20, 2024.

### ATF's examination of the Machinegun shipped by Hissong and received by SHEPHERD

An ATF firearms expert physically examined the Machinegun shipped by Hissong and received by **SHEPHERD**, and concluded that it meets the definition of "machinegun" under federal law. *See* 18 U.S.C. § 921(a)(24) and 26 U.S.C. § 5845(a). The expert reached these conclusions by examining and test firing the Machinegun, which shot automatically more than one shot, without manual reloading, by a single function of the trigger. Certified ATF records show that neither **SHEPHERD** nor Hissong had the Machinegun, or any machinegun, registered to them in the National Firearms Registration and Transfer Record at any point, as required under federal law. **SHEPHERD** admits that the Machinegun referenced in the forfeiture notice of the Indictment and in this Factual Resume is to be forfeited to the United States.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: February 5, 2025

Justin D. Roller
Assistant United States Attorney

6

Date: 2-6-2025

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: 4/8/25

Jothan Lee Shepherd
Defendant

Date: 4/8/25

Thomas R. Walsh
Attorney for Defendant

7